UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | No. 6:14-CR-25-ART-HAI-10 |
| v. | ) | RECOMMENDED DISPOSITION |
| ROBERT BLAKE LOVELL, | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant seeks suppression of evidence seized during a warrant-backed search of his residence on January 21, 2014, and the fruits thereof. D.E. 173. He asserts two bases for suppression. First, he argues that probable cause did not support warrant issuance. Second, he argues that the warrant was not issued by a neutral and detached magistrate. After a thorough review of the briefs, the evidence presented at the hearing, and the applicable law, the Court recommends that Defendant's motion be **denied**. In sum, the facts described in the affidavit supporting the warrant application were sufficiently reliable to provide a substantial basis for finding probable cause. Furthermore, Defendant has failed to carry his burden to establish that the trial commissioner who issued the warrant was not acting as a neutral and detached magistrate.

## I. ANALYSIS

### A. Probable Cause

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. Const., amend. IV. Probable cause to issue a

search warrant exists where "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Ilinois v. Gates*, 462 U.S. 213, 238 (1983). Because Defendant challenges a search pursuant to a warrant, the Court must "look only to the four corners of the affidavit" to determine whether the search was supported by probable cause. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (citing *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003)). This Court, in reviewing whether the state official's decision to issue the warrant was supported by probable cause, must not engage in line-by-line scrutiny of the affidavit. *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004) (citing *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001)). Rather, "[t]he affidavit should be reviewed in a commonsense . . . manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause . . . ." *Id.* (citing *Greene*, 250 F.3d at 479). This Court will set aside the issuing judge's probable cause determination only if the judge did not "'ha[ve] a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" *Id.* (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). The issuing judge's "determination of probable cause is afforded great deference, and that determination should be reversed only if the [judge] arbitrarily exercised his discretion." *Id.* (citing *Greene*, 250 F.3d at 479).

Here, the totality of the circumstances provided in the supporting affidavit supports the issuing judge's probable cause determination. On January 21, 2014, Assistant Chief Barry Adams, with the Mount Vernon Police Department, swore to an affidavit in support of an application for a search warrant to search the premises at 301 Tincher Drive, Mount Vernon, Ky,

2

40456[1] for "illegal narcotics, specifically oxycodone tablets . . [and] Cash money, stolen during the Citizen's Bank robbery used to purchase the oxycodone tablets." D.E. 173-3 at 1. The affidavit incorporated two attachments, the first of which was referenced after form language stating "On January 21, 2014, at approximately 12:17 p.m. Affiant received information from/observed." *Id*. at 2. The referenced attachment states:

> On 01/21/014 at 1217 hours Affiant and Chief Brian Carter conducted an interview of Lee SPEAKS at the Mount Vernon Police Department.
>
> SPEAKS stated to Affiant and Chief Carter that after he robbed the Cash Express store that he went to the residence of Nathan STEWART on Davis Street in Mount Vernon, KY and used the stolen money from Cash Express to purchase 25 oxycodone tablets for $700.00 from a male subject named Elmer. SPEAKS stated that he does not know Elmer's last name. Affiant knows that Nathan STEWART has a brother named Elmer STEWART.
>
> SPEAKS stated to Affiant that after committing the Citizen's Bank robbery he purchased 130 oxycodone tablets from Robert Blake LOVELL at LOVELL's residence located at 301 Tincher Drive, Mount Vernon, KY with the stolen money from Citizen's Bank. Affiant has arrested Robert Blake LOVELL for Trafficking in a Controlled Substance previously. Affiant also observed a text message on Robert Blake LOVELL's cell phone that referenced trafficking in oxycodone tablets.
>
> Affiant has received numerous tips and complaints from citizens and law enforcement that Nathan STEWART is trafficking in oxycodone tablets from his residence located at 45 Davis Street, Mount Vernon, KY.
>
> Affiant has also conducted several controlled purchases of oxycodone tablets from Nathan STEWART and Megan STEWART at their residence located at 45 Davis Street, Mount Vernon, KY.

D.E. 173-4.

The second incorporated attachment was included after the form language "Acting on the information received, Affiant conducted the following independent investigation:" D.E. 173-3 at

---

[1] The supporting affidavit erroneously identifies the subject premises as 45 Davis Street, Mount Vernon, KY, 40456, which Adams testified was due to a "cut and paste" error. D.E. 173-3 at 1. Defendant has not sought suppression on that basis.

3

2. That second attachment contains a lengthy and detailed description of the investigation of the Cash Express robbery referred to above. That detail is not directly relevant to the issues here, but it does corroborate that Speaks committed the Cash Express robbery. The second attachment concludes by stating:

> SPEAKS was then transported to the Mount Vernon Police Department by Affiant.
>
> Affiant read SPEAKS his Miranda Warning and SPEAKS agreed to speak with law enforcement.
>
> SPEAKS stated to the Affiant that he committed the robbery of the Cash Express store. SPEAKS stated to the Affiant that the reason he robbed the Cash Express store was that he was addicted to drugs and he needed the money for a child's birthday party. SPEAKS stated to the Affiant that he had used a .25 caliber pistol during the robbery. SPEAKS further stated to the Affiant that the articles of clothing located inside the residence were the ones had [*sic*] had worn during the Cash Express robbery.
>
> Affiant knows from KSP Officers that SPEAKS also confessed to robbing the Citizen's Bank.

D.E. 173-5 at 2.

Defendant claims that Speaks's statements concerning purchasing oxycodone at Defendant's residence are not sufficiently reliable or corroborated by other facts. Defendant contends that no information about Speaks's trustworthiness or reliability was provided in the affidavit, and law enforcement did not independently corroborate the information he provided. The argument continues that the affiant's indication that he had previously arrested Defendant and had observed a text message[2] on Defendant's phone concerning trafficking in oxycodone were too conclusory and vague to measurably add to the probable cause analysis. Defendant

---

[2] The Motion to Suppress Evidence indicates that defense counsel is concerned that an impermissible warrantless search of Defendant's cell phone occurred, but that concern was not meaningfully developed in the briefing on the Motion.

4

concludes by arguing that the affidavit was "bare bones" and provided nothing more than a mere suspicion of criminal activity.

However, Defendant overlooks that Speaks's statements were made against his penal interest and therefore the issuing magistrate was entitled to treat Speaks as reliable. "That some of the statements necessarily were against the penal interest of the informant weighs heavily in support of his reliability and is, we have held, a 'significant, and sometimes conclusive, reason for crediting the statements of an informant.'" *United States v. Barone*, 584 F.2d 118, 122 (6th Cir. 1978) (quoting *Armour v. Salisbury*, 492 F.2d 1032, 1035 (6th Cir. 1974)). Speaks's specific statements concerning Defendant are, at a minimum, doubly reliable on that basis. He admitted to both committing a bank robbery and to purchasing drugs from Defendant. Speaks also admitted to another robbery and drug transaction not directly involving Defendant. "Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search." *United States v. Harris*, 403 U.S. 573, 583-84 (1971).[3]

Defendant cites to *United States v. Brooks*, 594 F.3d 488 (6th Cir. 2010), in which the Sixth Circuit stated "'in the absence of any indicia of the informant's reliability, courts insist that the affidavit contain substantial independent corroboration.'" *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010) (quoting *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005)). But even if that were treated as a black-letter rule (despite *Illinois v. Gates*), it does not apply here because Speaks's statements against his penal interest do indicate reliability, so independent

---

[3] In *United States v. Higgins*, 557 F.3d 381 (6th Cir. 2009), the Sixth Circuit cautioned that, despite *Harris* having been handed down by the Supreme Court, Sixth Circuit precedent indicates that admissions against penal interest are only "sometimes conclusive" when crediting the statements of an informant. *Higgins*, 557 F.3d at 389-90 (quoting *Armour*, 492 F.2d at 1035).

corroboration is not necessary. Moreover, *Brooks* indicates that independent corroboration "is not a *sine qua non* to a finding of probable cause.'" *Id.* (quoting *Frazier*, 423 F.3d at 532).

The affidavit also indicates that the affiant had previously arrested Defendant for "Trafficking in a Controlled Substance." "Prior arrests or convictions can help establish probable cause, 'particularly where the previous arrest or conviction involves a crime of the same general nature as the one which the warrant is seeking to uncover.'" *United States v. Kaplan*, 526 F. App'x 208, 213 (3d Cir. 2013) (quoting *United States v. Stearn*, 597 F.3d 540, 557 (3d Cir. 2010)). *See also Kohler v. Englade*, 470 F.3d 1104, 1111 (5th Cir. 2006) (same); *Greenstreet v. County of San Bernardino*, 41 F.3d 1306, 1309 (9th Cir. 1994) (same). This reported arrest is clearly of the same general nature as the trafficking described by Speaks, and is therefore fairly considered in the totality of the circumstances.

Finally, the totality of the circumstances shows that Speaks was sufficiently reliable because he provided other information conerning criminal activity that the affiant had personally corroborated. According to the affidavit, Speaks purchased oxycodone tablets at Nathan Stewart's residence from a male named Elmer. The affiant was able to corroborate the report of drug sales at that residence through his own involvement in "several controlled purchases" at that same residence. In other words, although not directly related to Defendant, Speaks reported other criminal activity to the affiant that was corroborated, lending further support to Speaks's credibility overall.

When viewed in the required commonsense manner, the affidavit supplied a substantial basis for the issuing magistrate to conclude there was probable cause to believe the evidence sought would be found at Defendant's residence.

Additionally, even if the warrant lacked probable cause, the evidence obtained as a result

6

of the search should not be suppressed at trial. In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that "the exclusionary rule should not bar the government's introduction of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 918-21).

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Leon*, 468 U.S. at 921 (internal markings and quotation omitted).

Defendant argues that the *Leon* good-faith exception does not apply because "the affidavit is so lacking in indicia of probable cause that any belief in its existence is unreasonable." D.E. 173-1 at 7. The Court disagrees. An affidavit is "so lacking in indicia of probable cause" when it "contains only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge. . . .'" *Laughton*, 409 F.3d at 748 (quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)). Such affidavits "have come to be known as 'bare bones' affidavits." *Id*. The "so lacking" test is even less demanding than the substantial basis determination that applies to probable cause. *Id*. Here, the affidavit does not simply contain "suspicions, beliefs, or conclusions." It contains reports of several crimes committed by Speaks, which he described against his penal interest, additional indicia of Speaks's reliability, and a report of a prior, similar arrest of Defendant. Under these circumstances, the affidavit was not so deficient as to foreclose the application of the *Leon* good-faith exception.

7

## B. Neutral and Detached Magistrate

### 1. Proposed Findings of Fact

On September 17 and 19, 2014, the Court conducted an evidentiary hearing only with respect to the portion of the motion that challenges whether the search warrant discussed above was issued by a neutral and detached magistrate. D.E. 205, 208. All witnesses were called by the defense. Pursuant to Rule 59(a), having considered all the evidence in the record, the Court makes the following proposed findings of fact.

First, Jeremy Blake Rowe, currently a trial commissioner for the Rockcastle District Court and the issuer of the search warrant in question, testified that issuing search warrants is one of his duties, and he is the primary contact for law enforcement to do so after hours or if the district judges are not available. D.E. 215 at 10-11. He originally served as trial commissioner from January 9, 2014, to January 27, 2014, and was then reappointed in July. *Id*. at 10. As trial commissioner, Rowe is bound by the Kentucky Code of Judicial Conduct, including the rules on recusal, and various statutes governing trial commissioner authority. *Id*. at 12. For three to four months before filing to run for Rockcastle County Attorney, Rowe discussed his thoughts on doing so with family and close friends. *Id*. at 14. He signed the Notification and Declaration to file as a candidate for that office on January 26, 2014. *Id*. at 15-16. Thus, Rowe considered running for County Attorney while employed in that office and during his first stint as trial commissioner. *Id*. at 17.

Prior to his current position, Rowe worked as an Assistant County Attorney in the Rockcastle County Attorney's office from October 2011 to December 31, 2013. *Id*. at 12-13; 19. During that time, he and the County Attorney were the only lawyers in the office. *Id*. at 20-21. Rowe was responsible for, and handled, criminal district court, criminal juvenile court, certain

family court matters, mental health petitions, guardianship cases, drafting criminal complaints, and, on rare occasions, drafting or reviewing search warrants for police officers. *Id*. at 21. The office was responsible for prosecuting early portions of felony cases, typically meaning from arrest to indictment. *Id*. at 22.

On May 1, 2013, while Rowe was working as Assistant County Attorney, Defendant was charged with buy/possession of drug paraphernalia, trafficking in a controlled substance, second degree, first offense, and having expired tags. Def. Ex. 2. Bearing the case number 13-F-90, the prosecution was handled by the Rockcastle County Attorney's office. *Id*. at 26. The critical testimony concerning whether Rowe was personally involved in that prosecution is as follows:

> Q. Do you have any independent recollection of that case or your potential involvement in anything with that investigation?
>
> A. No. To testify truthfully, I very well could have been involved in that case, but I don't have any knowledge of it. One thing I can say from the documents Ms. Love gave me, that if it was a felony case, and it appeared to me it was pled down to a misdemeanor, that would usually happen based on the recommendation of the police officer. So I would assume the police officer in that case made a recommendation to the county attorney or myself to amend that down, so he got a plea deal in that case, and just -- that's just based at looking at the documents. I don't recall anything personally from it.
>
> Q. And sitting here today, do you have any independent recollection of anything about that prior case from May of 2013?
>
> A. I recall possibly having a conversation with a police officer about it, now that I've had time to think about it. I can't recall if I was the prosecutor in the court who actually took the plea deal, if there even was one, that could have been the county attorney. I really can't recall it. It very well could have been me because I think that's what the officer, which I can't really recall who the officer was, if it was Barry Adams that was there that day or someone standing in for him, but that's about the extent of my knowledge on that.

*Id*. at 35-36. Rowe also stated "I may very well have been in the courtroom when a plea deal was taken. I just don't recall it from memory." *Id*. at 44.

Rowe knows Defendant personally as they are distant cousins,[4] were born a few months apart, and "went to school together our entire lives." *Id*. at 32-33.

Acting as trial commissioner, on January 21, 2014, Rowe issued the search warrant in question. *Id*. at 33-34. He denied relying on any information outside that presented in the search warrant application or his personal knowledge of Defendant, and testified that he "based [the warrant] directly off what was in the attachment." *Id*. at 34. Rowe did not recall the 2013 case against Defendant when the search warrant application was presented to him. *Id*. at 37. He denied relying on anything he did or knowledge he gained as a prosecutor when issuing the warrant. *Id*. He further denied trying to curry favor with the police department in his run for County Attorney. *Id*. at 37-38.

Rowe was asked about the statement in the affidavit supporting the warrant that "Affiant also observed a text message on Robert Blake LOVELL's cell phone that referenced trafficking in oxycodone tablets." He indicated it appears as if that statement is a reference to a statement in support of the 2013 complaint against Defendant that "Subject had text messages on cell phone from a person wanting 30s, meaning oxycodone 30 milligram, registration plate 413." *Id*. at 39.

Finally, when asked if he had a conflict concerning the warrant because of his employment at the Rockcastle County Attorney's office when the 2013 case was prosecuted and having possibly talked to a an officer about the case, Rowe stated "I can see how you could see it that way, but I don't believe I did anything inappropriate. I believe I signed it based on the face of the document, and I believe that's what matters to me." *Id*. at 42-43.

Second, Defendant testified that he owns the house that was searched on January 21,

---

[4] Rowe testified he and Defendant are third cousins (*Id*. at 45), whereas Defendant testified they are second cousins (*Id*. at 57).

10

2014. *Id*. at 56. He confirmed knowing Rowe his whole life, that they grew up together, played ball together, and attended family functions together. *Id*. at 57. Defendant agreed with Rowe that they have a "pretty good relationship." *Id*. at 59. Notably, Defendant was not asked whether Rowe participated in the 2013 prosecution.

Finally, Barry Adams, Assistant Chief of the Mount Vernon police department, testified. Adams was the affiant in support of the search warrant in question and swore to the 2013 criminal complaint against Defendant.[5] Most of Adams's testimony did not relate to the issue of whether Rowe acted a neutral and detached magistrate. Adams testified that Rowe reviewed all the relevant documents for several minutes, meaning the warrant, affidavit, and supporting documents, at the Mount Vernon police department, and then signed the documents. Adams indicated the County Attorney assisted in drafting the documents. Adams does not recall being told by Rowe that he and Defendant were cousins, nor does he recall Rowe asking about the reference in the affidavit to the 2013 arrest or any discussion about Rowe running for county attorney. The warrant was presented to Rowe because the district court judges live in Pulaski County, much farther away than Rowe does. Adams recalled the 2013 arrest of Defendant, but does not recall which attorney from the County Attorney's office (meaning Rowe or the County Attorney) handled the prosecution, though he acknowledged Rowe was consistently working cases with the County Attorney. Finally, Adams acknowledged that the search warrant affidavit's reference to the 2013 arrest was a reference to the 2013 felony case discussed above, but that he does not know whether Rowe worked on that case in any capacity.

### 2. Conclusions of Law

---

[5] This portion of the suppression hearing has not been transcribed but was recorded via digital recording (D.E. 208), and the entirety of that recording was reviewed in formulating these proposed findings of fact.

Defendant contends the neutral and detached magistrate requirement was not satisfied for two reasons. First, he claims Rowe should have recused from consideration of the warrant application because Rowe's potential run for County Attorney rendered him not neutral and detached. Second, Defendant claims Rowe should have recused "because he served as a lawyer in the matter in controversy." Defendant acknowledges bearing the burden of proof on these issues. D.E. 202 at 3. Of course, the preponderance of the evidence standard applies. *See United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974).

"It is a long established requirement that, to be valid under the Fourth Amendment, a search warrant must be issued by a neutral and detached magistrate." *United States v. Parker*, 373 F.3d 770, 772 (6th Cir. 2004). A violation of this requirement means the warrant is "void *ab initio*." *Id*. at 774 (citing *United States v. Scott*, 260 F.3d 512, 515 (6th Cir. 2001)). As recognized by Defendant, the Fourth Amendment's protection "is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence." *Johnson v. United States*, 333 U.S. 10, 13-14 (1948). Instead, "[i]ts protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Id*. "Whatever else neutrality and detachment might entail, it is clear that they require severance and disengagement from activities of law enforcement." *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972).

Although recognizing the neutral and detached requirement is a Fourth Amendment protection, Defendant's arguments primarily rely upon Kentucky law. Pursuant to the Rules of the Supreme Court of Kentucky, Kentucky trial commissioners are appointed by the chief judge of the judicial district, and are authorized to issue search warrants. Supreme Court Rules

12

("SCR") 5.010, 5.030(a)(i). "A trial commissioner shall disqualify himself in all matters in which he has an interest, relationship or bias that would disqualify a judge." SCR 5.050. "Thus, reference must be had to the Code of Judicial Conduct for controlling authority." *Dixon v. Commonwealth*, 890 S.W.2d 629, 631 (Ky. App. 1994).

"Under Canon 2 of the Code, a [trial commissioner] must avoid all impropriety or the appearance of impropriety." *Id*. Defendant contends that because Rowe had previously been a prosecutor and had considered running for County Attorney that "he was so inextricably intertwined with the interest of law enforcement and the prosecutorial system that the warrant is void *ab initio*." D.E. 173-1 at 11. But the facts do not establish such a close link, and no authority has been offered that does so either. Rowe was a former prosecutor at the time he issued the warrant, and was merely considering a run for County Attorney. Many judges, including the presiding District Judge in this case, have served as prosecutors in the past, yet they are certainly neutral and detached. Defendant's cited cases indicate that is perfectly permissible. The Supreme Court of Kentucky is "cognizant that numerous trial and appellate judges and justices have roots which are embedded in the soil of the offices of Commonwealth Attorney and County Attorney." *Commonwealth v. Carter*, 701 S.W.2d 409, 410 (Ky. 1985). Noting that the Sixth Circuit has held that "the participation of the judge who had been a former prosecutor did not constitute violation of due process," the Supreme Court has held that there was no "bias, prejudice or partiality [and] there is no possibility thereof" when a judge relied upon prior convictions obtained while he was County Attorney to find a defendant to be a persistent felony offender. *Id*. at 411 (citing *Jenkins v. Bordenkircher*, 611 F.2d 162 (6th Cir. 1979)).

Nor does the contemplated run for County Attorney give rise to even an appearance of impropriety. At the time Rowe issued the warrant, he had only discussed such a run with family

and close friends, there is no evidence that he had actually decided to run or was actively campaigning in any way. No evidence suggests he crossed the constitutional line from a neutral and detached magistrate to a law enforcement role. Instead, the evidence indicates he reviewed the application presented and issued the warrant without relying on extraneous information. Defendant contends, relying upon *Small v. Commonwealth*, 617 S.W.2d 61 (Ky. App. 1981), that "it is reasonable to assume" that Rowe recalled the 2013 prosecution before he issued the warrant because that case was recent and involved Rowe's cousin, presumably meaning to attack Rowe's credibility and to cast doubt on whether he was in fact neutral. But Rowe testified contrary to that "assumption," the Court credits that testimony, and no evidence to the contrary was presented. In sum, "[t]he record shows no connection with any law enforcement activity or authority which would distort the independent judgment the Fourth Amendment requires." *Shadwick v. City of Tampa*, 407 U.S. 345, 350-351 (1972). Finally, no authority has been cited indicating that Rowe and Defendant's distant relation as cousins creates any impropriety.

Defendant next contends that the affidavit's reference to his arrest in 2013 and the resulting prosecution while Rowe was an Assistant County Attorney mean that Rowe was required to recuse from considering the warrant application. Canon 3.E.(1)(b) of the Kentucky Code of Judicial Conduct requires recusal if "the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter[.] SCR 4.300, Canon 3.E.(1)(b).[6] However, commentary to that provision provides "A lawyer in a government agency does not ordinarily have an association with other lawyers employed by that agency within the meaning of Section 3E(1)(b); a judge formerly employed by a government agency, however, should disqualify

---

[6] *See also* Ky. Rev. Stat. Ann. § 26A.015(2)(b) (West 2014).

14

himself or herself in a proceeding if the judge's impartiality might reasonably be questioned because of such association." *Id*.

The facts do not sufficiently establish that Rowe "served as a lawyer" in the 2013 prosecution of Defendant to require recusal. At best, the facts establish that he "may very well have" done so. D.E. 215 at 35-36. The Court finds that is a mere possibility, and not proof, by a preponderance of the evidence, that Rowe served as a lawyer. Indeed, the best evidence suggests otherwise. Although the docket sheet from the prosecution (admitted as a part of Defendant's Exhibit 2 at the hearing) does not indicate whether Rowe or the County Attorney handled the prosecution or appeared in court for any proceedings, the County Attorney signed a motion to revoke Defendant's probation in that case, signed multiple subpoenas as the requesting attorney, and was the addressee on a letter requesting discovery from Defendant's attorney. Thus, recognizing Defendant's burden and the standard of proof, the evidence shows merely that Rowe might have "served as a lawyer," not that he did. This means the second clause of, and commentary to, Canon 3.E.(1)(b) apply, and Rowe merely was employed by the prosecuting agency and did not "have an association with other lawyers employed by that agency within the meaning of Section 3E(1)(B)." Recusal was therefore not required.

The closer question, and that focused upon in the briefing, is whether the reference to the 2013 arrest in the affidavit means that that prosecution qualifies as "the matter in controversy" for purposes of whether Rowe should have recused. Although an interesting question, its answer does not matter. This is because, as discussed above, Rowe did not "***serve as a lawyer*** in the matter in controversy."

Finally, Defendant has not identified any authority that necessarily equates required recusal under Kentucky law with a violation of the Fourth Amendment. *Dixon v.*

15

*Commonwealth* recognized that the Fourth Amendment requires review by a neutral and detached magistrate and required suppression because a Kentucky trial commissioner should have recused from reviewing a warrant, but *Dixon* is not binding on this Court. This Court recognizes that Kentucky state courts can decide matters of federal constitutional law. But, their decisions are not binding. So, although this Court finds that Rowe was not required to recuse under Kentucky state law, even if he were, Defendant has not identified federal authority that holds the failure to follow a state ethics rule, particularly in the realm of "appearance of impropriety" or when "impartiality might reasonably be questioned," violates the Fourth Amendment.

## II. CONCLUSION AND RECOMMENDATION

For these reasons discussed herein, the Court **RECOMMENDS** that the District Court **DENY** Defendant's Motion to Suppress Evidence (D.E. 173).

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of that statute. As defined by § 636(b)(1) and Federal Rule of Criminal Procedure 59(b), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for de novo consideration by the District Court. The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics. Failure to object in accordance with Rule 59(b) waives a party's right to review.

This the 24th day of October, 2014.

