UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 14-25-ART-(10) |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ROBERT BLAKE LOVELL, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

In January of 2014, Officer Barry Adams of Rockcastle County, Kentucky, reviewed surveillance video of a robbery at a Cash Express store. His findings sparked a chain of events that ultimately led him to pursue an entirely different crime—the distribution of narcotics. Through his investigation, Officer Adams spoke with an informant who pointed him to a familiar suspect—defendant Robert Lovell. Officer Adams, who had previously arrested Lovell for drug trafficking, then obtained a warrant to search Lovell's home from trial commissioner and local magistrate Jeremy Rowe. Rowe also had a history with Lovell: Rowe had served in the county attorney's office when Lovell was previously prosecuted. Rowe also happens to be Lovell's second cousin.

Lovell argues that this unique combination of facts—the accusation from an informant and Magistrate Rowe's ties to the local prosecutor's office—renders the warrant defective. He maintains that the resulting search violated his Fourth Amendment rights and asks the Court to suppress the evidence seized from his home. But the warrant contained sufficient information to allow the trial commissioner to independently determine that

Officer Adams had probable cause to search Lovell's house. Because no Fourth Amendment violation occurred, suppression is not appropriate.

## BACKGROUND

Magistrate Judge Hanly A. Ingram provided a thorough overview of the relevant facts in his report and recommendation ("R&R"). *See* R. 236. Accordingly, a brief overview follows. In January 2014, Officer Barry Adams investigated a robbery of a Cash Express store. *See* R. 173-5 (Attachment B to Search Warrant — Affidavit of Officer Barry Adams). After reviewing surveillance footage of the robbery, Officer Adams identified a green Mercury Villager as the vehicle used in the crime. Soon after, Officer Adams conducted a traffic stop on a green Mercury Villager and talked with a passenger, Lee Hamilton Speaks. *Id.* at 2. Speaks later consented to a search of his home, where Officer Adams noticed clothing that he had seen the Cash Express robber wear while committing the crime and apparel worn by a suspect in a recent robbery at a Citizens Bank. *Id.* Officer Adams arrested Speaks, who then opened up. Speaks confessed to the Cash Express and Citizens Bank robberies. Speaks admitted to purchasing 130 oxycodone tablets at defendant Lovell's residence after the Citizen Bank robbery. R. 173-4; R. 173-5. Officer Adams had previously arrested Lovell for trafficking oxycodone. R. 173-4.

Based on his interview with Speaks and his prior interaction with Lovell, Officer Adams applied for a warrant to search Lovell's residence. As part of his warrant application, Officer Adams provided two attachments to his affidavit. *See* R. 173-4; R. 173-5. In those attachments, he recounted the origins of his contact with Lee Speaks and his previous encounter with Lovell. *Id.* Rockcastle County District Court Trial Commissioner and Magistrate Jeremy Rowe signed the warrant, and Officer Adams executed the search. Lovell

moved to suppress the fruits of the search. R. 173. He argued that the warrant was not supported by probable cause and that the issuing magistrate was not "neutral and detached." *Id.* at 4, 8. Magistrate Judge Ingram issued an R&R recommending that the motion be denied. R. 236.

## DISCUSSION

Lovell disputes Magistrate Judge Ingram's conclusions. R. 254 at 1. He also alludes to a new basis for challenging the search warrant as devoid of probable cause. See R. 254 at 3 (claiming that the affidavit in support of the warrant incorrectly listed Lovell's address); R. 236 at 3 n.1 (specifically noting that Lovell did not move for suppression on the basis that the affidavit erroneously reported his address). But a party waives review of any issues raised for the first time in objections to a magistrate judge's report and recommendation. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). The Court accordingly reviews the conclusions in Magistrate Judge Ingram's report and recommendation to which Lovell filed timely and sufficiently specific objections. *See Thomas v. Arn*, 474 U.S. 140, 147–48 (1985).

**I.     The Warrant and Affidavit Contained Sufficient Factual Information to Provide Probable Cause to Search Lovell's Residence.**

A magistrate judge evaluating whether a warrant is supported by probable cause must analyze the totality of the factual circumstances presented in the warrant and attached affidavits. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Taken together, the facts must give rise to a "fair probability" that evidence of a crime will be located at the premises of the proposed search. *See United States v. Jackson*, 470 F.3d 299, 307 (6th Cir. 2006). An affidavit, however, that simply recites "suspicions, beliefs, or conclusions" without other

3

support is a "bare bones" affidavit devoid of probable cause. *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996). Where, as here, an informant supplies facts for the affidavit, the magistrate must also determine that the affidavit indicates the informant's veracity, reliability, and basis of knowledge. *Id.* An informant may establish his reliability by, among other things, making a statement against his penal interest. *United States v. Higgins*, 557 F.3d 381, 389–90 (6th Cir. 2009).

An affidavit establishes probable cause where it both "recites that recent criminal activity was personally observed by a highly reliable informant" and contains corroboration by further police investigation. *United States v. Smith*, 182 F.3d 473, 476 (6th Cir. 1999). But it is not clear whether police corroboration is required in other cases where an informant is less reliable. On the one hand, an affidavit must contain police corroboration where there is an "absence of any indicia" of a confidential informant's reliability. *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010). But corroboration is not needed where the informant recently observed criminal activity and is identified by name in the affidavit. *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986) (holding that a named informant's statements about recent criminal activity were sufficient to establish probable cause to search a residence).

Based on the collective statements of both informant Speaks and Officer Adams, Magistrate Judge Ingram rightly determined that the affidavit provided probable cause to search Lovell's residence. The affidavit contained factual statements of the firsthand experiences of an informant—Speaks—who recounted his observations of criminal activity at Lovell's residence. *See United States v. Rose*, 714 F.3d 362, 368 (6th Cir. 2013) (upholding an affidavit that established a link between criminal activity and the defendant, as

well as the criminal activity and defendant's residence). Officer Adams corroborated portions of those observations with statements about his own personal knowledge and experience arresting Lovell for dealing drugs. So Magistrate Judge Ingram correctly concluded that the warrant contained statements based on personal knowledge.

Lovell argues that Officer Adams improperly relied on the "bare bones" warrant because it was plagued by "conclusory" statements. R. 173-1 at 4–6; R. 254 at 2. Lovell's objection lacks merit. Magistrate Judge Ingram properly characterized the statements attached to the affidavit as facts, not conclusions. R. 236 at 7. Speaks admitted that he purchased oxycodone from Lovell's residence four days before the warrant was signed, and Officer Adams claimed that he previously arrested Lovell for trafficking in oxycodone. R. 173-4; R. 173-5. Neither of those statements are mere "suspicions, beliefs, or conclusions" devoid of factual circumstances. *Weaver*, 99 F.3d at 1378. Rather, the statements provide data points that Magistrate Rowe could use to evaluate whether there was a "fair probability" that contraband would be found in Lovell's house. *Gates*, 462 U.S. at 238.

This is not a case where the evidence tying Lovell's drug dealing activity to his home was "so vague as to be . . . meaningless." *United States v. McPhearson*, 469 F.3d 518, 526–527 (6th Cir. 2006). Because there exists a "minimal nexus" between the place to be searched and the evidence sought, the warrant provided probable cause to search Lovell's home in a timely manner. *See Bethal*, 245 F. App'x at 479–80 (explaining that outdated information may be grounds for finding that a warrant was so devoid of information as to make an officer's reliance on it unreasonable).

That Officer Adams did not recount exactly when he had previously arrested Lovell or describe the ultimate disposition of that incident is of no moment and does not render his

statement "conclusory." R. 173-1 at 5–6; R. 254 at 2. From the "four corners" of the search warrant and affidavit, Magistrate Rowe could have found that Lovell, previously known to law enforcement for dealing drugs, was likely back to his old behavior, this time at his house. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006). After all, affidavits are not "required to use magic words" or spell out "what is obvious in context." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000).

But Lovell also objects to the probable cause finding on reliability grounds: Speaks's accusations, he argues, are not trustworthy, and Officer Adams failed to provide any meaningful corroboration of those declarations through an independent police investigation. R. 173-1 at 5–6. Corroboration is not necessary where, as here, a named informant recently observed criminal activity at the residence to be searched. *See Pelham*, 801 F.2d at 878. Moreover, Magistrate Ingram correctly determined that police corroboration is unnecessary because the affidavit already contains sufficient indicia of Speaks's trustworthiness. R. 236 at 5–6. Speaks's declarations were against his penal interest, as they implicated him in the illegal drug transaction at Lovell's house. *Id.* Such statements provide a good indication of reliability and eliminate the need for independent police corroboration in advance of applying for a warrant. *See United States v. Barone*, 584 F.2d 118, 122 (6th Cir. 1978); *see also United States v. Harris*, 403 U.S. 573, 583–84 (1971) (plurality opinion).

Accordingly, the statements of Speaks and Officer Adams, taken together, establish probable cause for the search of Lovell's residence.

**II. The Good-Faith Exception Would Apply Because Magistrate Rowe Operated as a "Neutral and Detached" Trial Commissioner, and the Warrant and Affidavit Were Properly Supported by Probable Cause.**

Even if the Court concluded that the warrant and affidavit did not provide Officer Adams with probable cause to search Lovell's home, it would have no basis to find that he conducted his search in vain. Why? Because, where officers reasonably rely in good faith on a warrant, the Court need not suppress the fruits of a technically impermissible search. *United States v. Leon*, 468 U.S. 897, 913 (1984).

This "good faith" exception does not apply in four circumstances, two of which Lovell argues are relevant to this case: (1) where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" and (2) where the issuing magistrate is not "neutral and detached." *Id.* at 915, 923; *see also* R. 173-1 at 7–8; R. 254 at 1. Again, however, Magistrate Judge Ingram correctly found that neither limitation to the good-faith exception applies in this case.

**A. The Warrant Was Not Lacking in Indicia of Probable Cause.**

As previously discussed, Officer Adams's warrant contained ample facts that would reasonably support a finding that there was probable cause to search Lovell's home. Accordingly, the warrant cannot, by definition, be "so lacking in indicia of probable cause" as to render unreasonable the belief that there exists probable cause for a search. *Leon*, 468 U.S. at 923.

**B. Magistrate Judge Rowe Acted As a Neutral and Detached Magistrate.**

The record reveals that trial commissioner Rowe acted as a "neutral and detached" magistrate when he approved of the warrant to search Lovell's residence. Rowe testified that he issued the search warrant after reviewing the "statements that were in the application and

the affidavit." R. 215 at 38. (Testimony of Jeremy Rowe). He also maintained that he signed the warrant after concluding that there was probable caused based on the "face of the document." *Id.* at 43. That Rowe read the warrant application, affidavit, and attachments and approved of the search based on the statements in those materials is sufficient to establish that he was acting as a "neutral and detached" magistrate who did not "wholly abandon" his role as a judicial officer. *See United States v. Frazier*, 423 F.3d 526, 537 (6th Cir. 2005).

Lovell notes that Rowe was employed at the County Attorney's office when Lovell was previously prosecuted, discussed the prior prosecution with a police officer, and ran for county attorney days after approving Lovell's arrest warrant. R. 173-1 at 10; R. 254 at 4. Based on those facts, he argues that Rowe was not acting as a neutral magistrate. The Sixth Circuit has found a judicial officer to have abandoned his neutral and detached role when he worked for the county jail and stood to "gain financially" from booking and arresting criminals. *United States v. Parker*, 373 F.3d 770, 774 (6th Cir. 2004). But Lovell provided evidence showing that Rowe earned a flat salary as a trial commissioner. *See* R. 173-8. This evidence refutes any claim that Rowe could have stood to gain financially from increasing the number of prosecutions in the county like the trial commissioner in *Parker*.

Lovell claims that a Kentucky Court of Appeals decision demonstrates that Rowe's conduct violated the Fourth Amendment. R. 173-1 at 10; *see also* R. 254 at 4. Citing *Commonwealth v. Dixon*, Lovell maintains that Rowe simply could not be "neutral and detached" when he evaluated the warrant authorizing a search of Lovell's home as a trial commissioner after working at the agency that prosecuted Lovell. R. 173-1 at 10 (citing 890 S.W.2d 629 (Ky. Ct. App. 1994) (holding that a trial commissioner who shared a law

8

practice with the county attorney in violation of the Kentucky Code of Judicial Conduct could not be "neutral and detached")).

But *Dixon* is inapposite. For one, as the decision of a state court on a matter of federal constitutional law, *Dixon* is not binding on this Court. States are, of course, competent to freely interpret the federal constitution unrestrained by the decisions of inferior federal courts. *See Tafflin v. Levitt*, 493 U.S. 455, 458–59 (1990). But it is not necessary for this Court to bind itself to a state court's pronouncement of federal law—and that too, one that rests on the particularities of state codes of judicial conduct. Doing so might create a patchwork of standards within federal law in this circuit for determining whether a magistrate is neutral and detached. *Cf. Michigan v. Long*, 463 U.S. 1032, 1040 (1983) (mentioning the importance of uniformity in federal law).

Even if the Court were to follow the approach in *Dixon*, the facts of the case simply are not analogous. The *Dixon* court found the shared law practice between the county attorney and the trial commissioner inappropriate, characterizing it as a "unique" arrangement. 890 S.W.2d at 631–32. No such ties are present in this case, where Rowe previously had a stint at the county attorney's office.

Lovell suggests that the Court read *Dixon* broadly to announce a rule that a trial commissioner who violates any Canon of Judicial Conduct is not "neutral and detached." R. 173-1 at 10. And Supreme Court Rule 5.050 specifies that a trial commissioner disqualify himself in all cases in which a judge must recuse himself from a matter. Under this interpretation of the case, Rowe would have acted improperly if he, for example, violated Canon 3(E)(1)(b), which requires a judge to recuse himself in a matter for which the judge previously served as a lawyer, or in which a lawyer with whom the judge previously

practiced law served as counsel. *See* Supreme Court Rule 4.300, Canon 3(E)(1)(b). But Rowe does not fall under this rule simply because he worked at the county attorney's office; a government lawyer does not "practice law" with another government attorney. *Id.* Rather, Rowe must have previously served as a lawyer in the matter of Lovell's prosecution to fall under this rule.

Ultimately, the burden rests on Lovell to show by a preponderance of evidence that magistrate Rowe acted as a rubber stamp by serving as a judge in a matter that he previously prosecuted. *United States v. Rodriguez–Suazo*, 346 F.3d 637, 649 (6th Cir. 2003); *United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974). Lovell failed to carry that burden, even under his broad reading of *Dixon*. Putting aside whether the present case is the "same matter" as Lovell's previous prosecution, nowhere in the record does Lovell present evidence that Rowe was the attorney who previously prosecuted him. At best, there are conflicting statements. Rowe first testified that he "could have been involved" in prosecuting Lovell but had "no knowledge of it." R. 215 at 35–36. Later in his testimony, Rowe clarified that he was at the county attorney's office when Lovell was prosecuted, but could not say that he prosecuted Lovell. *Id.* at 42–43. Those conflicting statements do not rise to a preponderance of the evidence showing that Rowe previously served as a lawyer in Lovell's prosecution. So even if the Court construed *Dixon* broadly, Lovell does not prevail on his challenge to Rowe's neutrality.

One final point: That Rowe publically announced his intention to run for county attorney days after signing a search warrant as a trial commissioner is of no constitutional significance. Lovell implies that Rowe had a conflict of interest because he must have harbored ambitions to work for the county attorney while he signed the search warrant as

trial commissioner. Yet Rowe testified that his plans were merely personal—he discussed his candidacy only with family and friends. R. 215 at 13–14. Lovell offers no evidence to suggest that Lovell's ambitions tainted his job performance. And no authority suggests that a judge's neutrality in a case can be impugned retroactively by a later decision to change career paths.

## CONCLUSION

Magistrate Rowe appropriately considered reliable facts in a warrant and found probable cause to search defendant Robert Lovell's residence for oxycodone. For this reason, and because Lovell did not show that Rowe was not "neutral and detached" when he approved the warrant, Rowe appropriately found that probable cause supported Officer Adams's warrant. Lovell has no grounds to suppress the fruits of the search.

Accordingly, it is **ORDERED** that:

(1) The Court **ADOPTS** Magistrate Judge Ingram's report and recommendation, R. 236.

(2) Lovell's objections to the report and recommendation are **OVERRULED**.

(3) Lovell's motion to suppress, R. 173, is **DENIED**.

This the 12th day of December, 2014.



Signed By:
*Amul R. Thapar*
United States District Judge