UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>ROBERT BLAKE LOVELL, )<br>)<br>Defendant. )<br>) | No. 6:14-CR-25-GFVT-HAI-10<br><br>RECOMMENDED DISPOSITION |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove (D.E. 1103), the Court considers reported violations of supervised release conditions by Defendant Robert Blake Lovell. This is his second revocation.

**I.**

District Judge Thapar entered Judgment against Defendant in October 2015 for one count of conspiracy to distribute heroin. D.E. 718 (plea agreement); D.E. 726 (Judgment). Defendant was sentenced to 21 months of imprisonment followed by eight years of supervised release. D.E. 726 at 2-3. The Judgment also provided that, after four years of violation-free supervision, Defendant could petition the Court to be removed from supervision. *Id*. at 3. Defendant was released on December 1, 2015.

On December 14, 2016, Defendant attended a status conference before Judge Thapar concerning his progress. D.E. 934. Upon Defendant's request, the Court reduced the frequency of his outpatient drug treatment visits. *Id*. In June 2017, the case was reassigned to Judge Van Tatenhove. D.E. 943.

On December 19, 2019, the United States Probation Office ("USPO") informed the Court that Defendant had recently submitted a urine sample that tested positive (via instant test) for methamphetamine and opiates. Defendant initially denied any drug use. But, during a subsequent telephone call, Defendant admitted using methamphetamine and hydrocodone as he dealt with the dissolution of a relationship. He then signed a positive urinalysis acknowledgement. The USPO did not seek revocation, but the probation officer placed Defendant on an increased drug-testing schedule and ordered Defendant to complete an outpatient substance abuse program. D.E. 1006.

Defendant's first revocation proceedings commenced on February 4, 2020, when the USPO reported as follows:

> On January 16, 2020, a personal contact was conducted with the defendant at his place of employment. At that time, it was requested Mr. Lovell provide a urine specimen for testing; however, he was unable to do so at that time. Given this, he was instructed to report to the U.S. Probation Office in London, Kentucky on the morning of January [17], 2020, at 9:00 a.m.
>
> Continuing on the morning of January 17, 2020, the defendant failed to report by the above stated time. I subsequently attempted to call Mr. Lovell, without success. However, at approximately 10:56 a.m., Mr. Lovell contacted this officer by phone, claiming his truck had broken down on the interstate. It is noted that in discussing this matter, the undersigned had concerns as to the viability of Mr. Lovell's statements. Further, he was ultimately directed to report to the probation office no later than 1:00 p.m.
>
> Upon his arrival to the London U.S. Probation Office, USPO Nick Jones secured a urine screen from the defendant, which USPO Jones described as appearing dilute. USPO Jones advised he would secure a follow-up specimen from Mr. Lovell, which would be sent to the laboratory for analysis.
>
> On January 23, 2020, the urine specimen collected by USPO Jones on January 17, 2020, was returned from the laboratory and determined to be dilute, as well as positive for the use of methamphetamine.

Defendant ultimately admitted to a Grade C violation (illegally possessing or using a controlled substance) and a Grade B violation (committing the crime of drug possession). He was sentenced to six months of imprisonment to be followed by four years of supervised release. D.E. 1028. Defendant was released on August 21, 2020.

On June 11, 2021, the USPO reported as follows:

> On June 2, 2021, the defendant had a scheduled appointment with Cumberland River Comprehensive Care, Mt. Vernon, Kentucky, which he failed to attend. With that, Mr. Lovell had no viable excuse for missing said appointment other than maintaining he had forgotten. Also, on this same date, the undersigned conducted a home visit at Mr. Lovell's residence, at which time a urine screen was collected and yielded positive results for the use of methamphetamine via instant cup. Initially, Mr. Lovell denied any continued illicit drug use, but subsequently acknowledged using the stated drug.

D.E. 1082. The probation officer requested no action be taken at that time, and Judge Van Tatenhove approved that request. The officer explained:

> Although the above described conduct is concerning, Mr. Lovell is gainfully employed at present, appears to be making some progress in re-establishing his relationship with his two young children, has a stable home, and is reportedly getting married in the near future to his current girlfriend. Also, the defendant reported to the treatment provider on June 3, 2021, at which time he attended a make-up session. The undersigned had also discussed Mr. Lovell's relapse, with the services provider, and these issues were further addressed with the defendant.

*Id*.

## II.

On August 16, 2021, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges three violations. According to the Report,

> During a personal contact with the defendant conducted July 28, 2021, a urine screen was collected, which was observed to be clear in color and appeared dilute. However, said test also indicated positive results for the use of methamphetamine via instant testing device. In addressing this matter with Mr. Lovell, the defendant stated he had recently gotten married, and went on to

      explain he had partied too hard over his honeymoon. I then inquired with Mr. Lovell as to where he had gone, to which the defendant stated Tennessee. The undersigned advised I did not recall him receiving permission to do so. In response, Mr. Lovell stated he had told me about this the last time we had talked. This officer subsequently told the defendant I recalled us having a conversation on the matter, but reiterated he had been instructed at that time to provide me of the dates and accommodations in advance, which he had subsequently failed to do. Ultimately, an admission form was reviewed and the undersigned penned the information provided by Mr. Lovell in the "Comments" section. The defendant subsequently signed said document formally acknowledging the use of methamphetamine.

Based on Defendant's admitted use of methamphetamine, Violation #1 alleges a violation of the condition that prohibits Defendant from unlawfully possessing a controlled substance. This is a Grade C violation.

      Also based on Defendant's methamphetamine use, Violation #2 charges a violation prohibiting commission of another federal, state, or local crime. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's methamphetamine use and possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

      Violation #3 charges a violation of the condition that Defendant "not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer." This Grade C violation is based on Defendant's unapproved travel to Tennessee for his honeymoon.

      Defendant was arrested, and the Court conducted an initial appearance pursuant to Rule 32.1 on September 2, 2021. D.E. 1112. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not request release.

*Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id.*

At the final hearing on September 10, 2021, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 1114. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all three violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as described in the Report. He admitted using methamphetamine and traveling to Tennessee without his probation officer's authorization. The United States thus established all three violations under the standard of section 3583(e).

### III.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to conspiracy to distribute heroin, a Class C felony. *See* 21 U.S.C. § 846. Such a conviction carries a 24-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violations #1 and #3 and a Grade B violation for

5

Violation #2. Given Defendant's criminal history category of II (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is six to twelve months. USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

### IV.

At the final hearing, the government argued for revocation with eleven months of incarceration and no supervised release to follow. The defense requested six months with no supervision to follow.

The government observed that Defendant's Criminal History Category of II is rather low, but he had trouble with supervision on state matters in the past. In terms of the relationship between the revocation conduct and Defendant's underlying conviction, the government noted that Defendant was now using a different drug (meth) than the drug cited in the underlying conviction (heroin). However, Defendant was an occasional meth user as indicated in his PSR. But neither drug can be obtained legally, Defendant's interaction with the black market to obtain meth raises the concern that Defendant could again become involved in distribution to fund his drug habit.

The government argued that the breach of trust here was "particularly aggravated." This is Defendant's fourth set of federal violations (two violations did not result in revocation

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

6

proceedings). The Court has given him a break in the past. Initially upon his release, Defendant was compliant with conditions for almost four years. But after those four years he has not done so well. First there was a meth positive that did not result in revocation. *See* D.E. 1006. Then there was a string of events that involved meth use and an attempt to evade testing. At the time, Defendant claimed his relapse was due to loneliness. Following that revocation, Defendant was out for less than a year when he missed treatment and tested positive for meth again. *See* D.E. 1082. He was placed on increased testing and given more outpatient treatment.

The government found it "particularly troubling" that once again Defendant initially attempted to dilute his urine specimen. Also, Defendant's current stated reason for using meth is not loneliness but partying. Two opposite rationales. The government argued that the breach of trust this time was worse and a longer sentence is needed.

As for additional supervision the government argued that, despite Defendant's successful initial four-year streak, he then violated repeatedly and subsequent interventions failed to lead to compliance. So additional supervision is not likely to be successful.

The defense argued that Defendant's role in the underlying drug conspiracy was not large. And he had performed well once on supervision for four years. His previous violation happened due to major life changes—being separated from his children "wrecked his world." The defense posited that Defendant again is facing major life changes, and he struggles in such times and tends to demonstrate poor judgment. A bitter custody battle over his children is ongoing. Defendant, as an addict, takes some steps forward and some steps backward.

The defense argued that Defendant has accepted responsibility for the violation conduct. He is also doing better in his personal life, having obtained an assistant manager position at a restaurant and gotten married. According to the defense, Defendant is extremely angry with

himself and is worried about the financial burdens on his family while he is incarcerated. The defense said Defendant is truly sorry. He is a kind, gentle, and loving father, son, and husband, and is a hard worker. He is committed to put his meth use behind him and hopes to some day run a restaurant of his own. The defense requested incarceration as close to home as possible so Defendant will be able to have his family visit him.

Defendant addressed the Court. He said he had nothing to add to the defense presentation except that he is sorry about what happened.

## V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range. The undersigned recommends something in-between the parties' recommendations— nine months of incarceration. Although the Court could re-impose supervised release, neither party argued for it, and the Court will accept that joint recommendation.

Most of the sentencing factors are the same as last time, except that Defendant's personal life has changed in some positive ways.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). A search of Defendant's residence uncovered numerous pills and a firearm. He pleaded guilty to participating in a wide-ranging conspiracy involving heroin. But he does not appear to have been a major player.

The Court next considers Defendant's history and characteristics and the need to deter criminal conduct and protect the public. Defendant was once successful on supervision for four

years. Though he was a serious addict, he did not undergo the RDAP program in prison. He has received outpatient treatment over the last couple of years. Defendant has been a hard worker and has progressed through the ranks at his job. He has now gotten married and continues to pursue custody of his children.

Another factor focuses on opportunities for education and treatment. Last time, the Court imposed an additional mental-health-treatment condition. This time, neither side argued for additional drug-abuse or mental-health treatment.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, the trust breach is significant because this is Defendant's fourth set of violations. His prior revocation with six months of imprisonment was not a sufficient wake-up call to induct compliance. Also troubling is Defendant's continuing tendency to try to hide his drug use by tampering with his urine specimen.

A final factor is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, both sides argued for within-Guidelines sentences. The Court ultimately recommends a sentence between the parties' two recommendations—nine months of imprisonment. This is an escalation from his six-month sentence last time.

9

For the reasons discussed above, the Court finds that a penalty of nine months' imprisonment is sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e). Given Defendant's recent history of continued noncompliance (despite lenient penalties from the Court and drug-addiction treatment), the Court recommends that no further supervision be imposed.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of all three violations;

2. Revocation with a term of imprisonment of nine months with no additional supervision to follow;

3. That Defendant be placed in the facility closest to home so he can maintain contact with family members.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If

Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 14th day of September, 2021.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge